of America, Arguments Not to Exceed 15 Minutes Aside. Ms. Rust Williams. Good morning. Good morning. Counsel for the appellant, Mr. Eugene Downs. I would ask to reserve three minutes for rebuttal. Very well. Mr. Downs received a mandatory minimum sentence of ten years. Can you keep your voice up? You're talking to an old man. Certainly, Your Honor. Mr. Downs received a mandatory minimum sentence of ten years. His sentencing hearing occurred the day before the Fair Sentencing Act was signed by the President. However, the judgment was not issued by the court until a number of days after the Fair Sentencing Act was signed. The written judgment you're talking about? Yes, Your Honor. As opposed to the oral judgment? Yes, Your Honor. The Fair Sentencing Act reduced the mandatory minimum that would be applicable to Mr. Downs from a ten-year mandatory minimum down to a five-year mandatory minimum. The district court erred by concluding that the Fair Sentencing Act does not apply to Mr. Downs. And Mr. Downs should receive the benefit of the Fair Sentencing Act for three reasons. First, the term sentencing as used by the Supreme Court in its Dorsey decision is broad enough to encompass the entry of judgment. Second, Mr. Downs received the ineffective assistance of counsel. And third, the Dorsey case applies retroactively under 28 U.S.C. 2255, subsection F3. Well, on the sentencing point, I think you probably know what we're going to say here. I mean, 3553A refers to, it says the court at the time of sentencing must state in open court the reasons for its imposition of the particular sentence. I mean, clearly, that's saying that the time of sentencing is the sentencing hearing, which I think if you asked 100 federal judges before this case come up, probably about 100 would tell you that's what they would think. Certainly, sentencing begins at the sentencing hearing. But that process is not concluded. I'm a sentencing. I mean, this is law. 3553A is law. And the criminal rules are law. And they repeatedly refer to sentencing as being the sentencing hearing. I mean, and those are law. Rules Enabling Act. Yes, Your Honor, they are law. But they are specific to the context in which they are applied. And here, the Dorsey case was dealing with when the Fair Sentencing Act should and should not apply to defendants, where that cutoff line should be. And the cutoff line is, you know, after the date of enactment. I mean, they weren't trying to redefine sentencing there, as I recall. Your Honor, they did not deal with what the definition of sentencing is. And they certainly weren't dealing with a Rule 35 motion. I mean, they weren't discussing the Rule 3553A factors. What they were trying to do was under the specific concerns that they were dealing with regarding who the Fair Sentencing Act should apply to, where the line is to be drawn. And the court said sentencing. The court did not define sentencing in one particular way or another. So Dorsey is not very helpful in trying to define sentencing, right? Your Honor, one thing that the court did in Dorsey, certainly the Dorsey court was very concerned with the concept of fairness and noted the Fair Sentencing Act itself was centered around fairness. Yeah. I mean, we've kind of heard this, you know, equitable sort of argument before in the Hughes case. I mean, you know, I mean, we can't just take Dorsey as a mandate that everyone should get, you know, everyone gets shorter sentences. Obviously, Congress wants shorter sentences. Congress could have, with a stroke of a pen, written a retroactivity provision into the Act. And none of us would have this problem. They didn't do that. And then you have a background principle, also in a statute. Presumption is the sentencing law that applies is the sentencing law when you committed the crime. So, I mean, just saying that, you know, Dorsey is about fairness. I mean, Dorsey was a creative case. But as a court of appeals, Dorsey does not let us blow through 3553, the Rules Enabling Act, the background statute, you know. We have to apply the law, not just sort of, you know, we're not a court of equity up here. Certainly, Your Honor. And I'm not asking this court to redefine Dorsey or to redefine the law that currently exists. What we're asking is to look at the definition of sentencing as used by the Supreme Court in Dorsey and conclude that that definition of sentencing is broad enough to extend to or encompass the entry of written judgment. But that doesn't define sentencing. The court in Dorsey gives us a hint, at least. The court indicates that it's unfair to apply the Pre-Fair Sentencing Act mandatory minimums after Congress determined that they were unfair. Specifically, the court indicated that limiting the FSA to post-act conduct would, and I quote, involve imposing upon the pre-act offender a pre-act sentence at a time after Congress had specifically found in the Fair Sentencing Act that such a sentence was unfairly long. The problem here is the imposition wasn't after. And they drew a line. I mean, I told everyone understands where you're coming from, but they drew a line. It's not after. Both houses of Congress had signed the bill before the oral pronouncement of sentencing. The Constitution's pretty clear. They passed the bill. Yes, Your Honor, thank you. And the bill doesn't become law until the President signs it. Yes, Your Honor, that's true. The President could have vetoed it. I mean, even though both the Senate and the House had passed it, you know, there's always a possibility the President may not approve it. Certainly, there is, Your Honor. And in this case, it was abundantly clear that the President's signature was effectively going to be a rubber stamp. And the court, the D.C. Circuit Court, goes into some detail in discussing all of the information that was out there from the administration indicating that they would be signing it. It also wasn't clear how Dorsey was going to decide the retroactivity of the Fair Sentencing Act. And they came up with the bright-line rule that the Fair Sentencing Act applies if the crime was committed before August 3, 2010, but was sentenced after that date. And it wasn't clear to everybody that that would be the retroactive rule, was it? I mean, in fact, our court had ruled differently. A lot of context. Is that right? Yes, Your Honor. Certainly, the Dorsey case did determine a circuit split. However, this outcome was a reasonable outcome. It was the outcome that we got. And while courts had held that Dorsey was not applicable to anyone, to any pre-act conduct, other circuits had held that it was. So there certainly were reasonable jurists that could see it one way or the other. And given that the Supreme Court ultimately concluded that it applied to pre-sentence. That kind of cuts against your ineffective assistance of counsel. If reasonable people could go either way, then how is the attorney's advice unreasonable? Well, I think that the D.C. Circuit's opinion in this, the Abney case, goes into a good deal of analysis on this point. And basically what that court stated was that it was unreasonable to fail to request a continuance in that case because there was a reasonable probability that jurists could conclude one way or the other. And the court indicates that when you are looking at the first prong of an ineffective assistance of counsel claim, which is the deficient performance prong, that that is viewed under, you look at the attorney's conduct and consider whether it's unreasonable under the prevailing professional norms as evaluated by reasonably competent attorneys. And in that case, the court noted that the defense bar in general was asking for continuances and that because both houses of Congress had signed the bill and there was such publicity that the court was likely to approve it, that failing to seek a continuance was ineffective assistance of counsel because it was possible that the court would ultimately, that the Supreme Court or the circuit court in that case would ultimately determine that it did apply to pre-act conduct. I mean, obviously it would have worked out better for him, but in terms of an ineffective assistance claim, you just have a hard time with 1 U.S.C. Section 109, the Federal Savings Statute, which expressly says that the sentencing laws that apply, that would apply to him, are presumed to be the ones when he committed the crime. And you had our court in Carradine and you had a whole bunch of other courts. I mean, it was a creative decision in Dorsey. I mean, the court sort of acknowledged that, you know, six factors that really didn't have much to do with anything in a statute. I mean, it's hard to see how it's just ineffective performance for a lawyer not to foresee that decision. Well, the D.C. Circuit certainly saw it otherwise. And while there was the savings statute that you referenced, the Sentencing Act of 1984, I believe, also indicated that the law should apply, that in effect at the time of sentencing should apply to the defendant. So as the Supreme Court held, there were conflicting statutes out there that a court could hold its hat on, one or the other, to conclude that it applied to pre-act conduct. One thing that is, I think, significant in the Abney case, which is the D.C. case, is they said there was no sound strategic reason for failing to request the continuance. Probably your best argument. And it would have cost the defendant nothing, and the possible benefit was undoubtedly significant. So the failure to seek a continuance under the circumstances and giving the possibility, the reasonable possibility, that the Fair Sentencing Act would be applied retroactively. It would just be hard to foresee. You know, it's not like the court had granted cert in Dorsey at the time of the sentencing hearing. I mean, who would have known that the court would come out that way? I mean, it's just very hard to foresee that. Well, certainly the D.C. circuit indicated that the defense bar in general had been moving towards asking for continuances in those cases, precisely because of the concern that the effective date of the act would potentially make a distinction or a difference as to whether or not an individual would benefit from it. The question is whether there's a reasonable probability that a continuance would have been granted under the prejudice prong. But what I'm trying to get at is the ultimate question in the ineffective assistance of counsel cases is would better lawyering have led to a different result? And in this case, I think that's true. That really isn't the standard for ineffective assistance of counsel. I mean, we'd have ineffective assistance in a lot of cases if you could have a better lawyer. But it really is the norms and it's a deviation of the norms of counsel. Not necessarily the best. That quote comes from the D.C. circuit's case, which is sort of a restatement of what the two prongs are ultimately trying to achieve. All right, you'll have your rebuttal. Good morning. May it please the Court, Bill Roach for the United States. Petitioner Downs was and remains correctly sentenced. Nothing in the Fair Sentencing Act of 2010 changes that result. And because Petitioner was sentenced after the Fair Sentencing Act became effective, the Supreme Court's opinion in Dorsey lends no assistance to Mr. Downs. Essentially, to avoid that... He was sentenced before the FSA became effective. And for that reason, the Supreme Court's opinion in Dorsey lends no support. In an attempt to avoid that conclusion, Petitioner tries to extend the date of sentencing. But as the law recognized, the sentencing happens with the oral pronouncement of the sentence. The federal rules of criminal procedure require a defendant to be present at sentencing. The rules lend and provide certain rights to a defendant at sentencing. And Petitioner cites no authority that would extend sentencing beyond the date of the oral pronouncement of the sentence. So if we assume, as we argue, that Petitioner was sentenced before Dorsey became effective, basically every court to have analyzed this issue has held that the Fair Sentencing Act simply does not provide relief to those offenders who were sentenced before. And I'd like to respond to essentially the ineffective assistance of counsel argument. At the outset, procedurally, the Certificate of Appealability doesn't... Of course, this court can expand that. And if it does, first of all, the claim as a district court held is untimely. But to the merits, Abney got it wrong in addressing the deficient performance. The conclusion in that case puts far too high of a burden on a defense counsel to predict a change in the law. Not only was the Fair Sentencing Act not applicable when Mr. Dorsey was being sentenced. I mean, the president had not signed yet, could have been vetoed. Nothing is a guarantee in the legislative process. And this court has held before that the standard is not clairvoyant. An attorney is not held to a standard of predicting changes in the law. Now, secondly, Abney essentially put a burden on counsel to not only predict that a law would become effective, but that a law would become retroactively applicable in the face of the General Savings Clause, which had not, to my knowledge, ever been overridden by a penalty scheme that was repealed by a new statute. And so it would be a bridge too far to require an attorney in that situation to not only predict that a law would become final, but to also be clairvoyant enough to predict that that law would be retroactive to pre-act conduct. The Supreme Court held in the Warden of Pennsylvania v. Morero case that a penalty scheme, that an offender who incurred a penalty under a pre-existing scheme was still passed later. And it's clear from the record that Mr. Downs' counsel was aware of the Fair Sentencing Act. I mean, he cited the fact that the FSA, if applicable, would lower Mr. Downs' guideline range. But he goes on to state in the sentencing memorandum at page 347 of the record that his amended guideline range would have no effect on Downs' sentence because Downs was subject to the statutory mandatory minimum. And he reasoned or analyzed, it appears from the record, that based on the fact that the Fair Sentencing Act most likely would not be retroactive, the Fair Sentencing Act would have no effect on Mr. Downs' sentence. He would still be sentenced to the 120-month statutory mandatory minimum. So given that, I'm admi in the D.C. performance standard, and we would strongly urge this court, if it does reach the ineffective assentence of counsel claim, to hold that predicting not only the passage of the FSA, but also the retroactivity of the FSA is simply too high of a standard to address the specific question at issue here, which is whether or not the definition of sentencing or the termination of  address the specific question at issue. The term sentencing, as used by the Supreme Court in Dorsey, encompasses the date that judgment was entered. This is an important date. Certainly sentencing begins at the sentencing hearing. But a defendant cannot appeal his sentence until after judgment is entered, and that is also the date that triggers the statute of limitations for 2255 cases. I mean, why isn't it simply that the judgment reflects the sentence, among other things? Certainly, the judgment does reflect the sentence. It is included in the judgment. But it has impact on what will happen next in the case. Does the oral pronouncement suggest that the judgment is something different from the sentence? It reflects the sentence, but it is not the sentence. The oral pronouncement of judgment is not the end of the sentencing process. That cannot be appealed until that formal written judgment is entered in the record. And that's indicated in the, I believe it's pronounced, Feichel case, which is cited by the government. The entry of judgment is an important date. And the definition, the use of the term sentencing in Dorsey is broad enough to include that date. And that would not open the floodgates in these cases. It would apply to a very, very limited number of defendants whose sentence happens to straddle, per se, the effective date of the Fair Sentencing Act. Your Honor, the government, in this case, is not arguing that Mr. Downs doesn't deserve a reduction because of his conduct or because of his personal characteristics. They're also not arguing that any new sentence or sentence under the post-FSA mandatory minimums would or should be the same as they were originally. The only reason asserted by the government to not apply the Fair Sentencing Act to Mr. Downs is that his sentencing hearing occurred the day before. But Congress had already determined that the mandatory minimum applied to Mr. Downs was unfair and that it was too high. The continued application of the pre-FSA mandatory minimum to Mr. Downs is not required by the Supreme Court's Dorsey case. Certainly the continued application of the pre-FSA mandatory minimums is unfair. While sentencing begins at the sentencing hearing, it's not complete until the judgment issues. The Fair Sentencing Act applies to Mr. Downs and accordingly we are asking the court to reverse the order of the district court and remand for resentencing.